**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:18-cr-136-MOC**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **HELEN MICHELLE WARREN,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 27). The Government has responded in opposition to the motion.

### I. BACKGROUND

On June 1, 2018, Warren entered a plea of guilty to one count of Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine (actual) and Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (Doc. No. 17 at 1). On October 9, 2018, this Court sentenced her to 60 months imprisonment. (Doc. No. 22). Warren has only three months of her sentence left to serve, with a projected release date of July 24, 2021. (Doc No. 27 at 21). She now moves for a sentence reduction resulting in her immediate release from the custody of the Bureau of Prisons (BOP), relying on family circumstances and the COVID-19 pandemic.

Warren has four children, aged 9, 11, 17, and 19; the three youngest live with her parents. (Doc. No. 27 at 4). Warren's parents were appointed as the Guardians of Warren's minor-

-1-

children on February 7, 2017. (Doc. No. 27-2 at 1-7). Warren's mother, Priscella Ramsey, has a history of diabetes, lung cancer, breast cancer, multiple sclerosis, stroke, and COPD. (Doc. No. 32-1 at 11). Mrs. Ramsey is also currently receiving treatment for or has been diagnosed with chronic pulmonary disease, severe anxiety disorder, chronic pain related to multifocal osteoarthritis, cerebrovascular disease, carotid artery stenosis, subclavian artery stenosis, and seizure disorder. (Doc. No. 32-1 at 9). Mrs. Ramsey's doctor noted in August of 2020 that "her conditions make it difficult for her to provide for her husband who requires assistance with activities in daily living." (Id.). Warren's father, Mr. Ramsey, suffers from high blood pressure, congestive heart failure, and spine deterioration, which all cause him to be dependent on Mrs. Ramsey to function in daily life. (Doc. No. 27 at 3). Furthermore, the three minor children in the care of Warren's parents each have psychological disorders such as PTSD, ADHD, ODD, and DMDD that make it especially difficult for Warren's ailing parents to care for them. Warren's 19-year-old daughter is unable to assist in the care of the minor children because she herself suffers from a severe learning disability. (Doc. No. 34 at 4-5). Finally, of relevance to Warren's risk of COVID-19 in prison, is the fact that she has asthma, potential hypertension, and a thyroid condition. (See Doc. No. 34 at 3).

While in prison Warren has held steady employment, completed numerous religious programs, and earned her GED. She has completed many adult continued education classes, as well as self-improvement classes. (See Doc. No. 27-1). Of particular note, she has successfully completed the Residential Drug Abuse program, Trauma in Life program, Suicide Companion program, Mothers in Adolescence program, and Parenting 1 and 2 courses.

-2-

Furthermore, during her years in prison, Warren has maintained a clean disciplinary sheet and paid off all of her court assessment fees. Her criminal history points are a 4-6 and her overall Female Pattern Risk Level is low. She was convicted for a non-violent offense and as such is serving a sentence as a non-violent offender.

On November 10, 2020, Warren filed a motion with this Court seeking compassionate release on the ground that her parents are not able to care for her children due to their declining health, and her own underlying conditions of asthma and obesity that put her at risk of developing severe or deadly symptoms from COVID-19. (Doc. No. 27 at 5-10). Warren previously filed a Motion for Compassionate Release that was denied without prejudice due to failure to exhaust her administrative remedies with the BOP. (Doc No. 26). She has now exhausted those administrative remedies.

Finally, if released, Warren plans to live with her parents and children and to accept an offer of employment in her parent's community at Gordon's Gas & Grill. (Doc. No. 32-1).

**II.    DISCUSSION**

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The Sentencing Commission outlines four situations where extraordinary and compelling reasons exist:

1. If a Defendant suffers from a terminal illness or a serious medical condition, a serious functional or cognitive impairment, or experiences "deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" Id. § 1B1.13 cmt. n.1(A).

2. If a defendant is at least 65 years old, is experiencing serious deterioration in

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

health because of aging, and has served at least ten years or 75 percent of his
sentence, whichever is less. Id. § 1.B1.13 cmt. n.1(B).

3. The defendant's family circumstances warrant release, including the death or
   incapacitation of the caregiver of the defendant's minor children or the
   incapacitation of the defendant's partner, if the defendant would be the only
   available caregiver. Id. § 1.B1.13 cmt. n.1(C).

4. If "there exists in the defendant's case an extraordinary and compelling reason
   other than, or in combination with, the reasons described in subdivisions (A)
   through (C)." Id. § 1.B1.13 cmt. n.1(D).

U.S.S.G. § 1B1.13 cmt. n.1. This fourth factor evinces broad discretion for the BOP and courts in determining what constitutes an extraordinary and compelling circumstance. Indeed, the guidelines place only the restriction that "rehabilitation of the defendant is not, *by itself*, an extraordinary and compelling reason for purposes of this policy statement." Id. § 1.B1.13 cmt. n.3 (emphasis added). Moreover, other sections of commentary reinforce the grant of authority to decision-makers to determine what is an extraordinary and compelling circumstance: "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." Id. § 1.B1.13 cmt. n.2.

The Sentencing Commission policy statements recognize the discretion and power of courts in deciding whose circumstances qualify as extraordinary and compelling:

> [t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of the reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

Id. § 1.B1.13 cmt. n.4.

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently

-5-

clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A).

Defendant's request for a sentence reduction will be granted because she has demonstrated extraordinary and compelling circumstances warranting her early release from prison. As explained above, under the relevant provision of Section 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

Here, Warren has put forward evidence that her mother and father are each suffering from a variety of severe illnesses. Their medical conditions continue to deteriorate. Her father seems incapable of helping with the three minor children due to his conditions, and doctors have written notes explaining that her mother's medical conditions make it extremely difficult for her to care for Warren's father, let alone three children. She has also presented evidence that her

children all have some form of psychological illness. Warren has put forward clear evidence that her parents are effectively unable to care for her three minor children. These family circumstances alone present extraordinary and compelling reasons to justify release, but Warren has also put forward evidence that she herself is at an increased risk to COVID-19 in the prisons due to her own medical issues such as asthma.

Even though the Court believes that "extraordinary and compelling reasons" exist to support release based on Defendant's family circumstances and health issues, the Court must also consider the Section 3553(a) factors, as "applicable," as part of its analysis in determining release. See 18 U.S.C. § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). The Section 3553(a) factors favor a sentence reduction in this case. The sentencing factors direct the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, protect the public from future crimes of the defendant, and provide just punishment. Further, the Court is directed to consider the history and characteristics of defendant and the need for the sentence to afford adequate deterrence to criminal conduct. These factors weigh in favor of a reduction in Defendant's sentence, given Defendant's non-violent criminal history, low risk of recidivism, exemplary disciplinary record while in prison, completion of many self-improvement and educational programs while in prison, clear plan for where she will live upon release, intent for employment upon release, and the fact that she has served nearly 95% of her prison sentence.

Furthermore, the Court finds that Warren does not pose a danger to her community. Warren's crime was non-violent, and she did not have an extensive criminal record before that

crime. She also appears to be at low risk for recidivism. The Court is optimistic that she will lead a law-abiding life after release and provide care to her parents and children. Her extensive record of rehabilitative activity in prison also tends to show that she is unlikely to be a danger to her community. See Pepper v. United States, 562 U.S. 476, 491 (2011) ("In assessing ... deterrence, protection of the public and rehabilitation ... there would seem to be no better evidence than a defendant's post-incarceration conduct.") (citation omitted). Moreover, it does not appear that Warren was on probation or parole at the time of her crime; further, Warren has no prison disciplinary infractions that the Court is aware of, and the Government has presented none. Taken together, these facts lead the Court to conclude that Warren does not pose a danger to the community.

Finally, the Section 3553(a) factors require courts to consider both utilitarian and retributivist principles in imposing sentences: defendants should receive sentences of adequate length relative to the severity of their crimes, but also long enough to make them examples to others who consider committing similar crimes. Here, Warren was convicted of a non-violent drug crime and has served nearly 95% of her prison sentence (57 of 60 months in prison). Furthermore, Warren accepts full responsibility for her criminal actions and declares that she has "a clear understanding that me being in prison is no-one's fault but my own." (Doc. No. 27 at 4). She also does not focus on her own suffering in prison but recognizes that her children and parents "are the ones who suffered the most from my bad decisions." (Id.). She asks for a second chance to be a daughter and mother to help her parents and children in their time of need. (Id.). In her letters to the court, Warren has expressed great remorse for the actions. Releasing Warren

-8-

three months early from a 60-month prison sentence would not be an injustice to those harmed by Warren's actions. Finally, her release, after serving approximately 95% of her sentence, will not lessen the impact of deterrence provided by the significant sentence originally imposed by this Court.

Having thus considered Defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 27), is **GRANTED**.

Defendant is **ORDERED RELEASED** from the custody of the United States Bureau of Prisons and/or the custody of the U.S. Marshals Service. To allow the Bureau of Prisons/United States Marshal/Pretrial Services adequate time, such are allowed up to ten days to comply with this Order.

Signed: April 9, 2021

Max O. Cogburn Jr
United States District Judge